***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted August 16, affirmed October 26, 2022, petition for review denied March 30, 2023 (370 Or 827)

In the Matter of J. R.-R. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. M. B.,
*Appellant.*

Grant County Circuit Court
21JU02617; A177907 (Control)

In the Matter of L. E.-R. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. M. B.
*Appellant.*

Grant County Circuit Court
21JU02619; A177909

In the Matter of W. A. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. M. B.,
*Appellant.*

Grant County Circuit Court
21JU02616; A177910

In the Matter of W. W. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. M. B,
*Appellant.*

Grant County Circuit Court
21JU02620; A177911

Robert S. Raschio, Judge.

Joel C. Duran, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Lagesen, Chief Judge, and Joyce, Judge.

LAGESEN, C. J.

Affirmed.

**LAGESEN, C. J.**

Mother appeals the termination of her parental rights as to her four youngest children, contending primarily that, when considered in conjunction with the applicable law, the evidence does not allow for termination. We affirm.

Our review is *de novo*. ORS 419A.200(6); ORS 19.415(3). That means that, guided by the focus of the parties' arguments on appeal, we must determine for ourselves whether the evidence is clear and convincing that mother's parental rights should be terminated. *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 750, 432 P3d 1186 (2018), *rev den*, 365 Or 556 (2019).

As an initial matter, this is a case in which mother has a mental health condition that, it is undisputed, qualifies as a disability under the Americans with Disabilities Act (ADA). That mental health condition affects mother's ability to parent and was one of the juvenile court's bases for termination. *See* ORS 419B.504(1)(f) (allowing a court assessing parental fitness to consider "[a] mental health condition of the parent of such nature and duration as to render the parent incapable of providing proper care for the child or ward for extended periods of time"). On appeal, the parties dispute how ORS 419B.504(1)(f) and ORS 419B.504(2) govern a court's assessment of a parent's mental health condition in a termination-of-parental-rights case.

That dispute is resolved by our decision today in *Dept. of Human Services v. N. H.*, 322 Or App 507, 520 P3d 424 (2022). There, we explained that ORS 419B.504(1)(f) and ORS 419B.504(2)

> "work in tandem to limit how (and whether) a court can consider a mental health condition when that mental health condition qualifies as a disability under the [ADA]: A court cannot consider a parent's disability alone as a basis to terminate parental rights, but it may consider evidence of a parent's *conduct* if that conduct interferes with the parent's ability to provide proper care for the child for extended periods of time. That holds true even when that conduct is based on or caused by a disability."

*Id*. at 515 (emphasis in original). Accordingly, we apply that legal standard in conducting our *de novo* review in this case.

Beyond that, a detailed recitation of the facts underlying this case would not benefit the bench, bar, or public. Having conducted our *de novo* review, we agree with the juvenile court that termination is warranted on the grounds identified by the juvenile court, including that mother's disability-related conduct renders her unable to provide proper care for her children for extended periods of time.

Mother argues for a contrary result, contending that the Department of Human Services (DHS) did not provide her with the specific services recommended for one of her mental health conditions—post-traumatic stress disorder (PTSD)—and that, therefore, there is no basis to infer that her disability-related conduct renders her unable to provide care for her children over an extended period of time. In support of that argument, she points to the juvenile court's statement that, with respect to mother's PTSD, DHS had not made "reasonable efforts" to address that condition because (1) the psychologist who evaluated mother had recommended 50 sessions of cognitive behavioral therapy and (2) there was no evidence that DHS had referred mother to that particular type of therapy.

Notwithstanding the deficiency perceived by the juvenile court in the services offered by DHS to address mother's PTSD, on *de novo* review we are persuaded by the evidence that mother's mental health conditions impair her ability to parent to the degree necessary to permit termination under ORS 419B.504.[1] Regarding the recommended therapy for mother's PTSD, we see the record differently from the juvenile court. The psychologist's written report did not specifically recommend cognitive behavioral therapy for mother; it recommended "individual therapy. This therapy should focus on her mental health, diagnostic symptoms, and general functioning challenges. This counselor should also be able to monitor and measure any reality-based impairments." There is no dispute that mother was

---

[1] We note that the juvenile court made a finding of reasonable efforts at each stage of the dependency process in this case, as required by ORS 419B.340, ORS 419B.337, and ORS 419B.476, including in the permanency judgments that changed the children's permanency plans from reunification to adoption. That tends to undercut somewhat the juvenile court's observation that the efforts to address mother's condition had not been reasonable.

offered therapy but stopped engaging with it. Further, at the hearing, although the psychologist testified that cognitive behavioral therapy was one potentially effective form of treatment for PTSD, he did not testify that it was the only approach. His testimony, instead, was that PTSD "is highly effectively treated in a number of different manners, most often as some sort of cognitive behavioral or cognitive behavioral type of therapy." For those reasons, we reject mother's argument that the absence of evidence that DHS offered cognitive behavioral therapy precludes the inference that mother's mental condition impairs her ability to parent to the degree necessary to permit termination, given all the other evidence in the record about mother's conditions, their effects on her conduct when parenting, and mother's treatment history.

Mother also appears to contend that termination is not warranted because DHS did not implement the psychologist's recommendation that the children be returned to her care one at a time. DHS attempted to implement that plan but could not because, among other things, mother checked herself into inpatient care for a short period of time, stopped engaging in therapy, and had difficulties in identifying a safety service provider to help facilitate that plan. And the evidence about the children's needs persuades us that reintegration of the children into mother's home under that plan is improbable within a reasonable time if DHS were to try it again.

Affirmed.